# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:

Wendy Alison Nora,

                  Debtor.

Chapter 13
BKY 15-41022- KHS

## MEMORANDUM OPINION AND ORDER

At Minneapolis, Minnesota, February 26, 2018.

This case came on for two days of evidentiary hearing commencing on August 7, 2017, and concluding on September 15, 2017, on the debtor's Motion to Disallow Claim #2-4, in Part, and Objection to Proof of Claim #2-4. The debtor, Wendy Alison Nora, appeared *in propria persona*; and Michael R. Pahl appeared on behalf of the claimant, Department of the Treasury - Internal Revenue Service. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(1) & 1334, FED. R. BANKR. P. 7001, and Local Rule 1070-1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

Pursuant to this Court's Order entered on October 30, 2017, initial post-hearing briefing was due from both parties on December 15, 2017, and any responses to post-hearing briefs were due on January 5, 2018. All post-hearing briefing has been concluded and the Court took the matter under advisement.[1]

The legal issue in this case is whether the debtor was entitled to a casualty or theft tax deduction for business records removed from her residence and disposed of after foreclosure.

---

[1] The debtor filed a Reservation of Rights and attempted to introduce additional evidence through post-hearing briefing and declarations. Evidence closed at the conclusion of the evidentiary hearing and the Court has not considered any new evidence or new legal arguments. Regarding the Reservation of Rights, the debtor has any appellate rights to which she would be entitled under applicable law.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *02/26/2018*
Lori Vosejpka, Clerk, by LH

1

The Court finds that as a factual matter, the debtor has failed to provide sufficient evidence to establish what was destroyed and its value in order to meet her burden to rebut the presumption of validity of the proof of claim. As a legal matter, the debtor has failed to show that the deduction should be allowed as a matter of law under the Internal Revenue Code. Accordingly, the debtor's Motion to Disallow Claim #2-4, in Part, and Objection to Proof of Claim #2-4 is denied. Proof of Claim #2-4 is allowed in the priority and amounts as filed.

## THE PARTIES

Wendy Alison Nora, is the debtor in this case.[2]

The claimant, the Department of the Treasury – Internal Revenue Service, is a federal agency and filed a proof of claim in this case.

## WITNESSES

Wendy Alison Nora – Ms. Nora is the debtor and is also an attorney licensed to practice law in Minnesota and Wisconsin. The debtor's law practice is conducted through a d/b/a known as Access Legal Services.

## PROCEDURAL HISTORY FOR THE CLAIM OBJECTION

1.  This matter has had a long history due to many, many delays. Wendy Alison Nora (the "debtor"), filed her motion objecting to the Department of the Treasury - Internal Revenue Service's (the "IRS") claim on September 19, 2016, and a preliminary hearing was originally scheduled to take place on October 20, 2016. The IRS timely filed a response to the claim objection on October 13, 2016, and the hearing was continued to December 1, 2016.

2.  The Court conducted a preliminary hearing on December 1, 2016, and scheduled an evidentiary hearing for March 6, 2017. The debtor sought a continuance of the March 6,

---

[2] The Court makes no findings as to the debtor's domicile or place of residence. The debtor uses a business address in Minnesota.

2017, evidentiary hearing after sustaining injuries after falling on ice. The Court converted the March 6th evidentiary hearing date to a status conference. The request for continuance was not opposed. The evidentiary hearing was continued to June 6, 2017.

    3. On May 23, 2017, the parties filed another stipulation seeking a continuance of the evidentiary hearing and it was again continued to August 7, 2017.

    4. The debtor then filed a series of discovery motions and made additional attempts to delay the start of the evidentiary hearing, including making a motion for sanctions on August 7th at the start of the evidentiary hearing. The debtor alleged that the IRS had obstructed certain depositions.

    5. After the debtor presented the motion, the Court took a recess, read the transcripts in question and reviewed the debtor's submissions. The Court then denied the motion for sanctions and the evidentiary hearing commenced. The debtor took the stand to provide testimony.

    6. In the middle of her testimony, the debtor abruptly announced in open court that she would be dismissing her bankruptcy case, rendering the claim objection moot. However, on August 11, 2017, the debtor filed a Notice of Withdrawal of Oral Motion to Dismiss Chapter 13 Petition. The Court then entered its order to resume the evidentiary hearing on September 15, 2017.

    7. On September 6, 2017, the debtor filed a motion to withdraw the claim objection without prejudice. On September 7, 2017, the Court entered its order stating that the request to withdraw would be heard immediately prior to the recommencement of the evidentiary hearing and further instructed the parties that if the request to withdraw was denied, the hearing would go forward as scheduled.

8.      On September 15, 2017, just prior to the commencement of the proceedings, the debtor attempted to submit another motion directly to the Court, along with her medical records, requesting yet another continuance of the evidentiary hearing. The Court refused to allow the last minute filing of the motion for continuance or the submission of the medical records finding that the debtor's alleged inability to go forward with the evidentiary hearing was not credible.  The debtor had prepared numerous filings in the week leading up to the evidentiary hearing and had driven from Madison, Wisconsin for the hearing.  Her voice was strong, she had no trouble standing when she was making arguments on the proposed continuance motion and the pending motion to withdraw the claim objection.  The debtor appeared to the Court to be fit to proceed with the evidentiary hearing.

9.      The Court denied the motion to withdraw the claim objection without prejudice. The Court told the debtor that, because the evidentiary hearing had already commenced, she could withdraw the clam objection <u>with</u> prejudice or proceed with hearing.  The debtor chose to proceed with evidentiary hearing. The hearing lasted the full day and was concluded on September 15, 2017.

10.     Since the time of her fall in the winter of 2017, the debtor has complained of headaches, anxiety, diabetes and other ailments that she alleges would necessitate accommodations under the Americans with Disabilities Act (the "ADA") during the evidentiary hearing on the claim objection. During the course of the evidentiary hearing on September 15, 2017, the Court provided <u>every</u> accommodation requested by the debtor including:  (a) allowing the debtor to remain seated at counsel table both to make arguments and testify; (b) allowing the debtor to take frequent breaks (approximately every 45 minutes) as requested; (c) allowing the

debtor to eat and drink in the courtroom throughout the duration of the evidentiary hearing; and (d) provided staff from the clerk's office to assist the debtor with courtroom technology.

11.     At the end of evidentiary hearing, the debtor requested that briefing be delayed as she was going to undergo treatment for her ailments and would be taking a 60 or 90 day leave of absence.  The Court allowed briefing to be stayed until she was done with her treatment. The debtor notified the Court in October 2017, that she was well enough to complete post-hearing briefing. The Court entered an order dated October 30, 2017, setting the briefing schedule as stated above.

## FACTS

### The Bankruptcy Case

12.     On March 27, 2015, the debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

13.     On July 22, 2015, the debtor moved to convert her case to a case under chapter 11.  An order granting that motion was entered on August 13, 2015.

14.     The deadline for governmental units to file proofs of claim was September 23, 2015.

15.     On June 2, 2015, the IRS timely filed Proof of Claim #2-1 asserting an unsecured priority claim of $32,114.22 and an unsecured general claim in the amount of $4,098.83 for a total claim of $36,213.05 for "taxes owing".

16.     The IRS filed three amendments to its proof of claim and its current Claim # 2-4 asserts an unsecured priority claim of $12,226.37 for income tax owing for tax years 2012 and 2013; and an unsecured general claim of $6,430.63 for interest on FUTA taxes and 2005 income taxes.

17. On April 15, 2016, the debtor filed her Motion and Alternative Motion to Re-Convert Chapter 11 Proceedings to Proceedings Under Chapter 13.

18. On August 26, 2016, an order granting the motion to reconvert to a case under chapter 13 was entered.

19. As discussed above, the debtor filed her motion objecting to the IRS's claim on September 19, 2016.

20. On November 17, 2016, the debtor's Chapter 13 Plan of Reorganization was confirmed.

21. The evidentiary hearing on the claim objection concluded on September 15, 2017.

**Basis of the IRS Claim**

22. Prior to filing her bankruptcy case, the debtor owned residential real property, a condominium or townhouse, located at 6931 Old Sauk Road, Madison, Wisconsin 53717 (the "Madison Property").

23. In 2009, Residential Funding Co. LLC ("Residential Funding") sued the debtor and alleged that she failed to make payments on the mortgage for the Madison Property. The debtor aggressively litigated that suit but ultimately lost and a judgment was entered on March 3, 2010. That judgment is final.

24. On January 25, 2011, a foreclosure sale was conducted and a sheriff's report of sale was filed.

25. The sheriff's sale was confirmed at a hearing on March 1, 2011, pursuant to Wisconsin Stat. § 846.165.

26.     A writ of assistance was entered on March 15, 2011, to aid the purchaser at the foreclosure sale in obtaining possession of the Madison Property.[3]  According to the debtor's testimony, she was evicted sometime between August 2011, and November 2011.  The debtor produced no documentary evidence establishing the actual date of eviction.

27.     The debtor did not reside at or visit the Madison Property between August 2011 and November 2, 2011. When she arrived at the Madison Property on or about November 2, 2011, the locks had been changed and her personal property had been removed.  The debtor contacted the Dane County Sheriff's Department that same day and was told that her property was in storage.

28.     At the time of the eviction, the debtor's personal property located at the Madison Property was either destroyed or put into storage.  The debtor testified that at the time of the eviction, some client files and business records were being stored in the basement of the Madison Property (the "Records").

29.     These Records were in boxes that the debtor had contemplated storing or destroying, prior to the eviction.  In order to support her argument that boxes with documents existed, the debtor introduced into evidence an April 15, 2011, bid from Naviant, Inc. ("Naviant"), a document storage and destruction company. The bid provides:

> … Customer has documents stored in boxes in the basement of her
> Madison townhouse office and would like a majority of them destroyed.
> Boxes that are to be saved are mixed in with boxes that are to be
> destroyed.  Boxes that will not be destroyed will be getting moved to
> customer's Minnesota office.
>
> Customer will pay invoice for services in advance.  For purposes of
> providing a pricing estimate, it is assumed that 100 standard ½ cubic foot
> boxes will be destroyed.  Customer will provide actual number of boxes if

---

[3] The debtor had filed a motion to vacate the writ of assistance, but on May 1, 2012, a Decision and Order Denying Motion to Vacate Writ of Assistance was entered upholding the entry of the Writ of Assistance.

7

> count or sizes are different than estimate to Naviant prior to invoice being generated….

The bid is unsigned and there is no dispute that the debtor never moved forward with Naviant to remove, destroy and/or store any of the Records allegedly contained in those boxes. Naviant did not view the boxes.

30. The debtor testified that she made no attempts to review or retrieve the property held in storage by the Sheriff's Department or at the storage company. The debtor provided no documentation from the Sheriff's Department or the storage company to prove what was removed from the Madison Property, what was being stored, what was destroyed or when it was destroyed or sold. The debtor offered no documents, testimony or other information as to whether the boxes removed and disposed of were related to her own personal case files or other client files, whether the documents were current or closed case files, federal case files, Minnesota case files, or Wisconsin case files. The debtor provided uncorroborated, self-serving testimony that she estimated that there were 20 boxes of client records that had been destroyed or removed from the Madison Property. The only evidence the debtor provided that the Records were removed and stored by the Sheriff's Department was the hearsay testimony of her alleged conversation with an individual at the sheriff's office.

31. The debtor introduced an email dated July 18, 2013, from Samantha Martin[4] to the debtor that provides:

> …With respect to the personal property, we are advised that it was removed from the [Madison Property] approximately two years ago in connection with your eviction. We are further advised that, although you had pledged to remove the personal property so that possession of the home could be transferred efficiently, you failed to do so. We are advised that there were certain moldy and water damaged boxes that were disposed of immediately, the remainder of the property was placed into storage and ultimately sold at auction after more than a year in storage.

---

[4] Samantha Martin was apparently an attorney at Morrison & Foerster who represented Residential Funding.

> During that time, we understand that you never made any inquiries regarding the status of the personal property, nor did you make any attempt to reclaim your property….

The debtor introduced this email in support of her case but then objected to the statements as being hearsay. This is the only documentary evidence introduced by the debtor to support her statements that boxes containing the Records were removed, stored and then destroyed. However, the Court is unable to determine from the evidence presented whether the Records were contained in moldy or water damaged boxes that were destroyed immediately or were included in "the remainder of the property" placed in storage and sold at auction a year later.[5] The email, introduced and objected to by the debtor, does not specifically state that <u>any</u> boxes were put into storage.

32. In her 2012 Income Tax Return the debtor claimed the following losses: $5,000.00 casualty loss by theft; $10,250.00 Ponzi Scheme loss; and $62,500.00 casualty loss client files pursuant to 26 U.S.C. § 165. The debtor has provided no documentary evidence to support the deductions. Rather, it is based on her estimate of the number of boxes allegedly removed and destroyed, and the number of pages that might have been contained within the boxes. She multiplied the number of estimated pages by the amount charged by the Wisconsin Court for copying. Again, there are no documents supporting the cost. There is no documentation regarding the value of the Records.

33. The IRS audited the debtor's 2012 and 2013 tax returns, rejected the debtor's claimed deductions and increased the amount of tax due. Neither party produced or offered a copy of the original tax return filed by the debtor but the audit report prepared by the IRS and

---

[5] The debtor testified that none of the boxes were moldy. This testimony is not believable as the debtor had not been at the Madison Property for three months and could not know the condition of her personal property at the time of eviction.

admitted into evidence states that the debtor claimed a deduction for a theft loss under § 165 of the Internal Revenue Code.

34. IRS Claim #2-4 is based on the increase in the amount of taxes due after denying the debtor's theft loss deductions. This is the basis for the unsecured priority claim included in Claim # 2-4.

35. The motion objecting to the claim states that the deduction on her 2012 taxes, which forms the basis of this claim objection, is a "casualty and theft loss" deduction. Theft loss deductions are included in § 165(c)(3) of the Internal Revenue Code.

36. The debtor argues that the IRS failed to apply the 2011 tax refund to which she was entitled to the 2012 taxes she owed and, therefore, the tax liability that the IRS alleges she owes for 2012, 2013 and 2014 is inaccurate. The debtor argues that if the 2011 refund had been appropriately applied, there would be no tax owing for 2012-2014 and, thus, that portion of the claim should also be disallowed.

37. Finally, the debtor concedes that she owes $4,082.92 as a general unsecured claim and argues that Claim # 2-4 should be allowed in that amount and priority and that the remainder should be disallowed.

38. The IRS objected to the debtor's motion to disallow the claim and argues that the debtor is not entitled to the claimed deduction for theft and casualty loss because she failed to provide adequate books and records in support of the deduction. The IRS also argues that the debtor is not entitled to claim a casualty or theft loss because the Records were destroyed in connection with the lawful eviction after the debtor's failure to pay her mortgage. Accordingly, there was no theft or casualty loss and there is no right to the deduction.

39. Throughout this case the debtor has consistently argued that she was entitled to a deduction under § 165(c)(3) for a loss that arose from theft or casualty. The debtor's post-hearing brief, however, argues for the first time that she claims a deduction for the loss of the Records under § 165(c)(1) for "losses incurred in a trade or business." The debtor has failed to meet her burden under both subsections of the Tax Code.

## DISCUSSION

The debtor argues that the IRS's proof of claim should be disallowed in part and allowed as a general unsecured claim of $4,082.94. The debtor's motion is denied and Claim #2-4 is allowed as an unsecured priority claim under 11 U.S.C. § 507(a)(8) of $12,226.37, and a general unsecured claim of $6,430.63.

**I.     Burden of Proof**

There is an issue as to the burden of proof in this case because of the interplay between tax and bankruptcy law.

This is an objection to a claim under the Bankruptcy Code. Section 502 of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a). Thus, a proof of claim that is properly filed is presumed valid. *PNY Technologies Inc. v. Polaroid Corp. (In re Polaroid Corp.)*, 527 B.R. 335, 345 (D. Minn. 2015) citing *Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)*, 318 B.R. 145, 152 (B.A.P. 8th Cir. 2004). A debtor must introduce <u>substantial</u> <u>evidence</u> to rebut the presumption of validity. *Id.* citing *Brown v. IRS (In re Brown)*, 82 F.3d 801, 805 (8th Cir. 1996) (internal quotation marks omitted in original), abrogated on other grounds by *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15 (2000). The debtor argues that the presumption was rebutted because the Court set this matter on for an evidentiary

hearing. That is incorrect. This matter was set on for an evidentiary hearing because there were facts in dispute.

On tax matters, the Bankruptcy Code does not alter the burden of proof imposed by substantive law. *Raleigh v. Ill. Dept. of Revenue*, 530 U.S. at 17. Rather, when the substantive law governing a tax claim puts the burden of proof on a taxpayer in a challenge to the amount of tax owing, the taxpayer will also have the burden of proof when challenging a claim for taxes filed in a bankruptcy case. *Id.* Specifically, § 7491 of the Internal Revenue Code provides that the burden of proof will only shift to the IRS "[i]f in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B…." 26 U.S.C. § 7491(a)(1). The Tax Code goes on to provide that this burden shifting is limited and will only apply if "… (A) the taxpayer has complied with the requirements under this title to substantiate any item; and (B) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews …." 26 U.S.C. § 7491(a)(2)(A) & (B).

When interpreting the burden of proof in a tax dispute, courts recognize that "[d]eductions are a matter of legislative grace, and the taxpayer must maintain adequate records to substantiate the amounts of any deductions or credits claimed." *Nagel v. C.I.R.*, 102 T.C.M. (CCH) 121 (2011) citing *INDOPCO Inc. v. Commissioner,* 503 U.S. 78, 84 (1992). Further, "[a]s a general rule, the Commissioner's determination of a taxpayer's liability in the notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is improper." *Id.* The taxpayer must show that she is entitled "to a claimed deduction by a preponderance of the evidence." *Blodgett v. C.I.R.,* 394 F.3d 1030 (8th Cir.

2005) (internal citations omitted).  See also *Riley v. C.I.R.*, 111 T.C.M. (CCH) 1205 (2016).  The taxpayer might shift this burden "to the I.R.S. to disprove entitlement to a claimed deduction if the taxpayer introduces 'credible evidence' complete with the necessary substantiation and documentation sufficient to fulfill the requirements of §7491." *Blodgett v. C.I.R.*, 394 F.3d at 1035.  Credible evidence for purposes of § 7491 is the "'quality of evidence, which after critical analysis, the court would find sufficient upon which to base a decision on the issue *if no contrary evidence were submitted* (without regard to the judicial presumption of IRS correctness).'" *Id.* (internal citations omitted, emphasis in original).  Testimony by a taxpayer that tends to support a claimed deduction is not necessarily sufficient to shift the burden of proof to the IRS because the court has the right to reject the testimony as incredible.  *Id.* at 1035-36.  In other words, "[a] fact finder may choose to disbelieve evidence on its face even without evidence to the contrary." *Id.* at 1036.

Here, the IRS's claim for the taxes owing is deemed allowed as filed and the burden is on the debtor to present <u>credible</u> <u>evidence</u> in order to show she is entitled to the claimed deduction.  Moreover, the shifting of the burden of proof under § 7491 is only relevant where there is an evidentiary tie or equal evidence on both sides.  *Knudsen v. C.I.R.*, 131 T.C. 185, 189 (2008).  In other words, "[i]n a case where the standard of proof is preponderance of the evidence and the preponderance of the evidence favors one party, [the court] may decide the case on the weight of the evidence and not on an allocation of the burden of proof." *Id*.  Testimony provided by the taxpayer should be weighed with any documentary evidence provided and appropriate inferences may then be drawn.  *Larkin v. C.I.R.*, 113 T.C.M. (CCH) 1239 (2017).  A court is not required to accept the testimony of a witness at face value if the testimony is implausible or not credible in view of the totality of the surrounding circumstances.  *Id.*  Vague and conclusory testimony by a

taxpayer that is obviously provided with a self-serving motive is not credible evidence sufficient to shift the burden of proof back to the IRS under § **7**491. Rather, "credible evidence is evidence that, after critical analysis, the Court would consider sufficient to decide an issue for the party presenting the evidence, if no contrary evidence were submitted; and … a taxpayer who provides only self-serving testimony and inconclusive documentation [has] failed to provide credible evidence." *Id.* citing *Higbee v. Commissioner*, 116 T.C. 438, 442, 443-46 (2001).

Here, the taxpayer is an experienced tax and bankruptcy attorney; she should surely understand the necessity of maintaining documents to support her deductions and producing them during the audit and at evidentiary hearing. See *Id.* As will be discussed below, the Court did not find the debtor's testimony to be credible. She failed to maintain and produce documents to support her deductions.

## II.    The Tax Deduction Under Section 165(c)(3)

Throughout the duration of these proceedings and in her tax returns, the debtor has argued that she is entitled to a casualty theft loss for the value of the Records that were disposed of after she was evicted from the Madison Property. Section 165 of the Internal Revenue Code provides that "[t]here shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." 26 U.S.C. § 165(a). The Tax Code goes on to provide that "[i]n the case of an individual, the deduction under subsection (a) shall be limited to … losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." 26 U.S.C. § 165(c)(3). Relying on § 165(a) & (c)(3), the debtor claimed a $62,500.00 deduction on her 2012 taxes for the casualty or theft of the Records.[6]

---

[6] According to the Audit Report introduced into evidence by the debtor, she claimed that 50,000 pages of files were stolen and the retrieval cost is $1.25 per page.

If the Court assumes that Records were destroyed, there is no dispute that the Records are connected to the debtor's trade or business. She is a lawyer licensed to and practicing law in Minnesota and Wisconsin and the Records are allegedly client files. Accordingly, § 165(c)(3) does not apply because this is a tax return filed by an individual for loss of property that is connected with a trade or business. In addition, even if the Court were to determine that the Records are not connected to a trade or business, § 165(c)(3) does not apply because there was no theft or casualty related to the Records.

A deduction claimed under § 165(c)(3) can include a loss based on theft, which includes, but is not necessarily limited to larceny, embezzlement, and robbery and that was not compensated for by insurance or otherwise. *Blodgett v. C.I.R.*, 394 F.3d 1030 (8th Cir. 2005); *Martin v. C.I.R.*, No. 6069-11S, 2012 WL 6698718 (Tax Ct. Dec. 26, 2012). A theft for purposes of the deduction includes "'any criminal appropriation of another's property to the use of the taker.'" *Id.* The taxpayer bears the burden of proving both the occurrence of a theft and the amount of the loss. *Id.* Moreover, to claim a theft loss deduction the taxpayer must prove: (1) a theft occurred under the substantive law of the jurisdiction where the loss occurred; (2) the amount of the loss; and (3) the year in which the taxpayer discovered the loss. Finally, the taxpayer must show that she has no reasonable prospect of recovery, including recovery through insurance. *Riley v. C.I.R.*, 111 T.C.M. (CCH) 1205 (2016); *Nagel v. C.I.R.*, 102 T.C.M. (CCH) 121 (2011) (internal citations omitted).

When property is taken under a lawful authorization, or at least under the color of legal authority without criminal intent, the taxpayer is not entitled to a theft loss deduction. *Rafter v. C.I.R.*, 60 T.C. 1 (1973). The United States Tax Court has specifically found that the value of personal property that is lost or damaged during a lawful eviction after foreclosure cannot be the

15

basis of a casualty or loss-theft deduction. *Washington v. C.I.R.*, 60 T.C.M. (CCH) 256 (1990) aff'd 930 F.2d 919 (6th Cir. 1991) (finding that when taxpayers were evicted pursuant to a court order there was no theft because the mortgage holder "'proceeded under a lawful authorization or a least the color of legal authority,' and had no criminal intent"). See also *Martin v. C.I.R.*, 2012 WL 6698718 (internal citations omitted) (finding that "[a] theft includes, but is not limited to, larceny, embezzlement, and robbery…. A taxpayer, however, whose property is taken by another under a procedure sanctioned by law is not entitled to a theft loss deduction because by definition no theft has occurred.").

Here, there was a lawful eviction and the property was removed in connection with a final writ of assistance. The appeals and challenges to the foreclosure and the writ of assistance failed and the orders are and were final.

### III.   Failure to Provide Sufficient Evidence

To rebut the presumption of validity of the IRS's claim, the debtor must provide sufficient credible evidence showing she is entitled to the deduction. The debtor has wholly failed to provide credible or even reliable evidence to substantiate the deduction. The presentation at an evidentiary hearing and the arguments made in the debtor's briefs are hard to understand and unnecessarily accusatory and hostile in tone. The debtor makes many assertions without any evidence or case law to support them. She has buried the Court in paper throughout these proceedings and often changed or shifted arguments and legal theories. The debtor provided no evidence, other than her self-serving, uncorroborated testimony to establish what was destroyed and to support the value of the Records. She introduced an email establishing that some boxes were destroyed in September 2011, but also objected to the email as hearsay. The only pieces of documentary evidence to support her deduction was a copy of the IRS audit report

16

Case 15-41022   Doc 259   Filed 02/26/18   Entered 02/26/18 14:55:52   Desc Main
            Document     Page 17 of 18

and the unsigned bid from Naviant to remove and both destroy and store an unknown number of boxes and documents. While the debtor testified that she estimated the number of boxes and the cost to reproduce the files based on the charges that would be incurred for obtaining copies from the Wisconsin court, this testimony is insufficient. The debtor testified that she never actually saw the documents that were in storage or destroyed and, therefore, cannot establish which documents or records were destroyed. The debtor cannot establish that records were removed and stored after the eviction. There is no list of cases, no list of client names, no information about whether the documents were notes or pleadings, and no information about the venue of the cases.[7] The debtor's estimates of what was lost and the replacement cost are neither sufficient nor reliable enough to rise to the level of being either substantial evidence or credible evidence. The Court is unable to make findings as to what precisely was lost and the value based on the evidence presented.

## IV.  The Tax Deduction Under Section 165(c)(1)

The debtor's post-hearing brief appears to combine the § 165(c)(1) and (c)(3) deductions. She argues that she is claiming a deduction for the theft of the business records as a business loss under § 165(c)(1). Section 165(c)(1) provides that "[i]n the case of an individual, the deduction under subsection (a) shall be limited to … losses incurred in a trade or business." This claim is meritless. As stated above, the debtor cannot establish credible evidence to support the deduction.

## CONCLUSION

The debtor has failed to provide substantial evidence to overcome the presumption of validity of the proof of claim and shift the burden of proof back to the IRS. Further, the debtor

---

[7] If the Records were for cases that were not filed in Wisconsin, the cost to replace them as charged by a Wisconsin court would not support the debtor's loss valuation.

has failed to provide credible evidence to establish, either factually or legally, that she is entitled to the claimed deduction under the Tax Code. Thus, the motion objecting to Claim #2-4 is denied and the claim will be allowed as filed in the amended amounts.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(1) & 1334, FED. R. BANKR. P. 7001, and Local Rule 1070-1.

2. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

3. The debtor's motion objecting to the Internal Revenue Service's proof of claim is denied and Claim #2-4 is allowed as an unsecured priority claim under 11 U.S.C. § 507(a)(8) in the amount of $12,226.37, and a general unsecured claim in the amount of $6,430.63.

## ORDER

IT IS ORDERED: Proof of Claim #2-4 is allowed as an unsecured priority claim under 11 U.S.C. § 507(a)(8) in the amount of $12,226.37, and a general unsecured claim in the amount of $6,430.63.

/e/ Kathleen H. Sanberg
KATHLEEN H. SANBERG
CHIEF UNITED STATES BANKRUPTCY JUDGE